## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Linda Lee Soderstrom, Maria Johnson,
Craig Goodwin, Jurline Bryant, and Julio
Stalin de Tourniel, on behalf of themselves
and others similarly situated, and

HOME Line, a Minnesota nonprofit                          Civil No. 16-233 ADM/KMM
corporation,

               Plaintiffs,

v.

MSP Crossroads Apartments LLC, a
Minnesota corporation, and Soderberg
Apartment Specialists (SAS), a
Minnesota corporation,

               Defendants.

---

**MEMORANDUM OPINION AND ORDER GRANTING FINAL APPROVAL OF
CLASS SETTLEMENT, APPROVAL OF NOTICE PLAN, OVERRULING OF
OBJECTION, APPROVAL OF PLAN OF ALLOCATION AND
AUTHORIZATION OF DISTRIBUTION, APPROVAL OF INCENTIVE AWARDS,
FEES AND EXPENSES, AND FOR FINAL CLASS CERTIFICATION AND
ENTRY OF FINAL JUDGMENT**

---

### INTRODUCTION

On January 23, 2018, the undersigned United States District Judge heard oral argument

on Plaintiffs Linda Lee Soderstrom, Maria Johnson, Craig Goodwin, Jurline Bryant, and Julio

Stalin de Tourniel (collectively, the "Class Plaintiffs"), and Plaintiff HOME Line's (together

with Class Plaintiffs, "Plaintiffs") Motion for Order and Judgment Granting Final Approval of

Class Action Settlement and Certifying Settlement Class (the "Motion") [Docket No. 192].

Kristen G. Marttila, Esq., Kate M. Baxter-Kauf, Esq., and Charles N. Nauen, Esq., Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, and Timothy L. Thompson, Esq., Housing Justice Center, St. Paul, MN, appeared on behalf of Plaintiffs.  Margaret R. Ryan, Esq., and Bradley J. Lindeman, Esq., Meagher & Greer, PLLP, Minneapolis, MN, appeared on behalf of Defendants MSP Crossroads Apartments LLC ("MSP") and Soderberg Apartment Specialists ("SAS") (collectively, "Defendants").

Objections [Docket Nos. 182, 186] to the Motion have been filed by Claire J. Lee ("Lee").   Lee did not appear at the hearing.[1]

For the reasons set forth below, Lee's Objections are overruled and the Motion is granted.

## BACKGROUND[2]

On February 1, 2016, Plaintiffs commenced this action alleging that Defendants violated the Fair Housing Act's ("FHA") prohibitions against disparate treatment and disparate impact

---

[1] Less than four hours before oral argument on the Motion was scheduled to begin, Lee sent an email to the Court requesting that the hearing be continued because she was ill.  The Court denied the request for a continuance based on the inconvenience to the many other participants planning to attend the hearing.  Further, the extensive submissions that were filed by Lee in support of her Objections gave the Court a thorough background for her Objections.

This was the second time Lee requested a continuance.  The first request was made four days before the scheduled hearing.  At that time, Lee emailed and called the Court asking that the hearing be continued for three weeks so that she could reply to Defendants' Response [Docket No. 190] to her Objections.  This request was denied.

[2] The factual background giving rise to this lawsuit is set forth in greater detail in the Court's July 5, 2016 Memorandum Opinion and Order [Docket No. 41] and is incorporated by reference.

discrimination under 42 U.S.C. § 3604, and also violated Minn. Stat. § 504B.315.  <u>See generally</u>
Compl. [Docket No. 1].  Plaintiffs moved for a preliminary injunction and Defendants moved to
dismiss Plaintiffs' claims.  <u>See</u> Pls.' Mot. Expedited Prelim. Inj. [Docket No. 15]; Defs.' Joint
Mot. Dismiss [Docket No. 10].  The Court denied Plaintiffs' motion for a preliminary injunction,
denied Defendants' motion to dismiss Plaintiff's claims under the FHA, and granted Defendants'
motion to dismiss Plaintiffs' claim under  Minn. Stat. § 504B.315.  <u>See</u> Mem. Op. Order, Apr.
15, 2016 [Docket No. 39]; Mem. Op. Order, July 5, 2016 [Docket No. 41].

From July 2016 to March 2017, the parties engaged in extensive discovery, including the
production of documents and responses for at least twelve Plaintiffs, depositions of three named
plaintiffs, third-party discovery, and the production of more than 2,300 pages of documents from
Defendants.  First Marttila Decl. [Docket No. 178] ¶ 3.

In April 2017, the parties participated in multiple mediation sessions with United States
Magistrate Judge Katherine M. Menendez.  <u>Id.</u> ¶ 4.  Although no settlement was reached during
these sessions, the parties continued to negotiate potential settlement terms and participated in
periodic status conferences with Judge Menendez from April through August 2017.  <u>Id.</u>

In June 2017, Judge Menendez entered an order severing the individual claims of Lee,
then a named plaintiff, from the putative class action claims raised by the Class Plaintiffs.  <u>See</u>
Order, June 14, 2017 [Docket No. 159].  Lee's individual claims were severed due to "the very
different approaches to the litigation taken by Interim Class Counsel and Ms. Lee," which made
it difficult to achieve progress in the litigation.  <u>Id.</u> at 3.  A separate civil case was opened for
Lee's individual claims.  <u>See</u> <u>Lee v. MSP Crossroads Apartments LLC, et al.</u>, No. 17-2045 (D.
Minn.).  Lee's individual case remains pending.

In September 2017, the parties arrived at a finalized Settlement Agreement.  See First Marttila Decl. Ex. 1 ("Settlement Agreement").  The Settlement Agreement provides that for three years after the effective date of the Settlement Agreement, Defendants will amend their screening criteria for applications for tenancy at the apartment complex formerly known as Crossroads at Penn and now known as Concierge Apartments (the "Property") and will amend all public marketing materials, application materials, screening criteria disclosures, and any other public documents, including websites, to be consistent with the amended screening criteria. Additionally, if MSP, or an entity in which it or at least one member or director of MSP beneficially owns, holds, or controls a membership interest, or an entity that is an affiliate of MSP, acquires a property located within the seven-county metropolitan area during the next three years, and if that property is managed by SAS, Defendants will apply the amended screening criteria at the newly acquired property for two years and will amend all materials during that period.  Further, SAS will recommend to the owners of each of the properties for which it is retained as the property management company that those owners similarly amend their screening criteria for tenancy applications.  Defendants will also provide training on the Fair Housing Act to all leasing agents employed at the Property.

Additionally, Defendants will pay $650,000 to resolve all claims in the lawsuit.  The payment will be distributed as follows:  (1) $200,000 to an Equitable Relief Fund for the purpose of assisting in the acquisition and preservation of naturally affordable rental properties in the Twin Cities Metro Area at risk of conversion to higher rents and the threat of displacement of low and moderate income residents; (2) $300,000 in payments to the Settlement Class, which consists of two subclasses, the Displacement Class and the Application Class, as defined in the

Settlement Agreement; (3) $40,000 to Plaintiff HOME Line; (4) $76,000 to pay attorneys' fees; (5) $14,000 to pay incentive awards; and (6) $20,000 to pay notice and administration costs.

Under the Settlement Agreement, Defendants will be released from any and all claims that were or could have been raised arising out of the subject matter of the litigation. The Settlement Agreement explicitly recognizes that the severed individual claims asserted by Lee in her separate action are not affected by the Settlement Agreement. See Settlement Agreement ¶¶ C, G, I(B)(3), I(B)(24), V.

The Court preliminarily approved the Settlement Agreement on October 19, 2017. See Order [Docket No. 184] ("Preliminary Approval Order").

After preliminary approval of the settlement, the parties carried out the Court-approved notice program, which included: (1) mailing a long-form notice and claim form packet to Class Members located through reasonable efforts and records from Defendants; (2) establishing a public website to provide information regarding the litigation, settlement, and claims process; and (3) establishing a toll-free telephone hotline regarding the settlement and claims process. Keough Suppl. Decl. [Docket No. 205] ¶¶ 3–5. Claims administrator JND Legal Administration, LLC ("JND" or "Claims Administrator") mailed notice and claim forms to 501 addresses for potential Displacement Class Members and received 230 claim forms from the Displacement Class. Id. ¶¶ 7, 9. JND mailed notice and claim forms to 1,648 addresses for Application Class Members and received 131 claim forms from the Application Class.[3] Id. ¶¶ 7, 9. Lee is the only Class Member who has objected to the settlement. Id. ¶ 6.

---

[3] Upon reviewing the submitted claims, JND has determined that there are 213 eligible Displacement Class claims and 115 eligible Application Class claims. Id. ¶¶ 15-16.

5

Additionally, Defendants mailed notice of the settlement to state Attorneys General and the U.S. Attorney General, in accordance with the Class Action Fairness Act., 28 U.S.C. §§ 1715(b).  Marttila Suppl. Decl. ¶ 3.  None of the notified federal or state officials have objected to the settlement or otherwise commented.

Plaintiffs now move for final approval of the settlement; approval of the notice plan as comporting with due process; approval of the proposed plan of allocation for the settlement proceeds; authorization to distribute the settlement proceeds; approval of Plaintiffs' request for incentive awards, attorneys' fees and expenses; conditional certification of the Settlement Class, and entry of judgment.

## DISCUSSION

### A.      Approval of Class Action Settlement

Under Federal Rule of Civil Procedure 23(e), a court may only approve a proposed class action settlement if the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2). To determine whether a class action settlement satisfies these standards, the court must consider: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement."  In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932 (8th Cir. 2005).

The Eighth Circuit recognizes that "'strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.'"  Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1148 (8th Cir. 1999) (quoting Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1, 921 F.2d 1371, 1388 (8th Cir. 1990)).  Accordingly, courts in the Eighth Circuit

have held that "there is a presumption of fairness when a settlement is negotiated at arm's length by well informed counsel." In re Charter Commc'ns, Inc. Sec. Litig., No. 02-1186, 2005 WL 4045741, at *5 (E.D. Mo. June 30, 2005); see also In re Zurn Pex Plumbing Prods. Liab. Litig., No. 08-1958, 2012 WL 5055810, at *6 (D. Minn. Oct. 18, 2012) ("There is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval.") (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (4th ed. 2002)).

The settlement is presumptively valid. It is the product of substantial expertise and diligence of both plaintiff and defense attorneys. The settlement was negotiated by counsel with expertise in class action litigation generally as well as housing law specifically. Marttila Suppl. Decl. ¶ 6; Marttila Aff. Supp. Mot. Appoint Interim Class Counsel [Docket No. 71] Exs. 1-2. Prior to reaching settlement, the parties diligently litigated multiple motions and engaged in extensive discovery. The assistance of Judge Menendez as a neutral mediator to facilitate settlement negotiations further demonstrates that the settlement was negotiated fairly and honestly at arm's length.

### 1.    Merits of Case vs. Settlement Terms

Even if the settlement was not presumptively valid, it satisfies the fairness criteria for Rule 23(e) established by the Eighth Circuit. The most important consideration is the strength of Plaintiffs' case on the merits versus the amount offered in the settlement. See Petrovic, 200 F.3d at 1150. In deciding on the merits, the Court need not "go beyond an amalgam of delicate balancing, gross approximation, and rough justice." White v. Nat'l Football League, 822 F. Supp. 1389, 1417 (D. Minn. 1993) (internal quotations omitted).

The merits of Plaintiffs' case were arguably[4] strong but raised considerable legal and factual challenges.  Litigation under the Fair Housing Act is complex and poses difficult legal issues.  Additionally, the putative class faced multiple risky litigation hurdles, including class certification, summary judgment, Daubert motions, a lengthy trial, and probable appeals.  On the other side of the scale, the amount offered in the settlement includes a large lump sum payment and substantial equitable relief.  Not only has the settlement been described by affordable-housing advocates as the largest of its kind in the nation,[5] it provides immediate and certain benefits to Class Members.  Thus, this factor weighs in favor of approving the settlement.

**2.      Defendants' Financial Condition**

There is no evidence questioning Defendants' financial condition.  This factor weighs in favor of approval.

**3.      Complexity and Expense of Further Litigation**

Generally, class actions "place an enormous burden of costs and expense upon [ ] parties."  Marshall v. Nat'l Football League, 787 F.3d 502, 512 (8th Cir. 2015) (quoting Schmidt v. Fuller Brush Co., 527 F.2d 532, 535 (8th Cir. 1975)).  This case is no exception.  The costs and delay of litigating this case through trial and probable appeal would have potentially exceeded any damages award.  Accordingly, this factor also supports final approval of the settlement.

---

[4] Defendants maintain that there is no evidence to support Plaintiffs' claims of disparate treatment and disparate impact under the FHA.  See Defs.' Resp. to Obj'n. [Docket No. 190] at 7–9.

[5] See Marttila Suppl. Decl. [Docket No. 204] Ex. A.

### 4.     Opposition to the Settlement

Of the more than 2,000 notices mailed to potential Class Members, only one individual objected.  This strongly weighs in favor of approving the settlement.

Based on the foregoing, the Court finds that the settlement is fair, reasonable, and adequate.  The settlement is approved.

## B.     Class Certification

The Court next considers whether certification of the Settlement Class is appropriate. Rule 23(a) requires as a prerequisite for class certification that the following be shown:  (1) the class is so numerous that joinder is impracticable; (2) questions of law or fact are common to the class; (3) the representative parties' claims or defenses are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class interests.  Fed. R. Civ. P. 23(a)(1-4).

Once the Rule 23(a) prerequisites are met, the class action may be maintained if the court determines that a Rule 23(b) factor is met.  Plaintiffs request certification under Rule 23(b)(2). This factor permits class certification if "the party opposing the class has [allegedly] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

### 1.     Rule 23(a) Prerequisites

The proposed class here meets all the prerequisite requirements of Rule 23(a).  Courts in Minnesota have found that putative class sizes of forty will support a finding of numerosity, and much smaller classes have been certified by courts in the Eighth Circuit.  See, e.g., Lockwood

Motors, Inc. v. Gen. Motors, Corp., 162 F.R.D. 569, 574 (D. Minn. 1995) (approving of classes of as few as forty members); Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist., 446 F.2d 763, 765-66 (8th Cir. 1971) (approving class of twenty members).  Here, the proposed Settlement Class size is in the hundreds, as evidenced by the number of claims forms received from eligible Class Members.  Given the numerosity of Class Members, joinder is impracticable.  Moreover, no party or Class Member has challenged the numerosity prerequisite.  Accordingly, this Court finds the class sufficiently numerous to satisfy Rule 23(a)(1).

The second prerequisite, commonality, is also met.  The threshold for commonality is low, requiring only that the legal question "linking the class members is substantially related to the resolution of the litigation."  DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir. 1995).  "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment."  Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977).  Here, the Class Members' claims all derive from the same legal theories:  disparate impact and disparate treatment discrimination under the FHA.  Common questions of law and fact include whether Defendants' application criteria have a disparate impact on protected classes; whether Defendants intentionally discriminated in violation of the FHA; and, if discrimination is found, whether injunctive relief and punitive damages are warranted.

The third prerequisite, typicality, exists when there are "other members of the class who have the same or similar grievances as the plaintiff."  Id. at 830; see also E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403 (1977).  "Typicality is satisfied when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the

claims of the class members." Lockwood Motors, 162 F.R.D. at 575 (internal quotations omitted). Here, all named Plaintiffs are members of the Displacement Class because they were residents of Crossroads at Penn on September 30, 2015, do not reside at Concierge Apartments now, and belong to households that include at least one person qualifying as a member of a protected class under the FHA under one of the following categories: non-white; handicapped as defined by the FHA; national origin; and familial status (which, for purposes of this settlement, is limited to tenants who had or desired to have more than two individuals reside in a unit due to at least one individual under the age of 18 residing in the unit). First Marttila Decl. ¶ 15. Moreover, named Plaintiffs Linda Soderstrom, Maria Johnson, and Jurline Bryant are also members of the Application Class because they are members of a protected class as described above and also applied for tenancy at the property but were rejected, or completed a guest card expressing interest in tenancy at the property but did not apply, as a result of the screening criteria imposed by Defendants. Id. ¶ 16. If Defendants' screening practices were to be found unlawful, the named Plaintiffs' claims would be affected in the same way as the other Class Members. Thus, typicality is satisfied.

The final Rule 23(a) prerequisite is met because the class representatives and counsel are adequate. Adequacy of representation is satisfied where: "(1) the class representatives have common interests with the members of the class, and (2) the class representatives . . . vigorously prosecute the interest of the class through qualified counsel." Paxton v. Union Nat'l Bank, 688 F.2d 552, 562–63 (8th Cir. 1982). Adequacy of representation also requires "that the plaintiff must not have interests antagonistic to those of the class." U.S. Fid. & Guar. Co. v. Lord, 585 F.2d 860, 873 (8th Cir. 1978). Here, the named Plaintiffs who seek to be class representatives

are members of the classes they seek to represent and are seeking the same relief.  Thus, they

have common interests with the Class Members.  Additionally, the named Plaintiffs have

vigorously prosecuted the interests of the Class by assisting their attorneys in the investigation of

claims, drafting the Complaint, reviewing disclosures, producing documents, sitting for

depositions, and attending settlement conferences on behalf of the Class.  First Marttila Decl.

¶ 17.  Class counsel is also highly qualified to represent the interests of the Class.  Plaintiffs'

legal team possesses substantial experience and expertise in class action litigation and housing

discrimination law, and has zealously litigated this action.  Marttila Suppl. Decl. ¶ 6; Marttila

Aff. Supp. Mot. Appoint Interim Class Counsel Exs. 1-2.  Moreover, the named Plaintiffs have

no known or inherent conflicts between the interests of the class representatives and those of the

class.  First Marttila Decl. ¶ 17.  The Court thus concludes that all of the Rule 23(a) prerequisites

have been met.

### 2.      Rule 23(b)(2)

In addition to satisfying the Rule 23(a) prerequisites, the Settlement Class also satisfies

Rule 23(b)(2) because "the party opposing the class has [allegedly] acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Specifically, Defendants have allegedly acted on grounds generally applicable to the Settlement

Class by changing their tenant screening criteria.  Additionally, final injunctive relief eradicating

this conduct is appropriate to the class as a whole and is central to resolving this litigation.  See

Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 614 (1997) (holding that Rule 23(b)(2) is

appropriate when plaintiffs seek injunctive relief in civil rights cases "against parties charged

with unlawful, class-based discrimination"); Paxton, 688 F.2d at 563 (holding that class was properly certified under Rule 23(b)(2) because plaintiffs sought injunctive relief against class-wide discrimination) .  The fact that damages were sought incidentally to the request for injunctive relief does not change this result.  See DeBoer, 64 F.3d at 1175 (affirming certification of class under Rule 23(b)(2) where damages were sought incidentally to the request for injunctive relief); Paxton, 688 F.2d at 563 (same).  Additionally, payments to individual Class Members will be made based on a generally applicable formula that does not require individualized determinations.  Thus, certification of the Settlement Class under Rule 23(b)(2) is proper.

**C.    Notice**

The Preliminary Approval Order outlined the form and manner by which Plaintiffs would provide the Class with notice of the settlement, fairness hearing, and related matters.  As stated earlier, the notice program included individual notice by U.S. Mail to members of the Class who could be identified through reasonable efforts, the set-up and maintenance of a case-specific website, and of a toll-free number.  JND has provided proof that the mailing conformed to the Preliminary Approval Order.  See Keough Suppl. Decl. ¶¶ 3–5, 7–12.  The notice program fully complied with Fed. R. Civ. P. 23, satisfied the requirements of due process, was the best notice practicable under the circumstances, and constituted due and adequate notice to the Class of the settlement, final approval hearing, and other matters referred to in the notice.  In addition, Defendants complied with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.  None of the state or federal officials who received the CAFA notice have commented on or opposed the settlement.  Thus, the Court concludes that the notice program comported with

13

due process and the requirements of Rule 23.

**D.     Lee's Objections**

Lee raises numerous objections to the settlement.  For the following reasons, Lee's Objections do not alter the Court's conclusion that the settlement is fair, reasonable, and adequate; that certification of the Settlement Class is appropriate; and that the notice program comported with due process and Rule 23.

Lee objects to several aspects of the notice procedure, arguing that the notice period was too short, the notice was confusing, and the process for objecting was unduly burdensome. However, the two-month notice period was sufficient for preparing and filing objections, as evidenced by the lengthy and detailed objection filed by Lee.  Additionally, the Court disagrees that the notice was confusing or that the process for filing objections was onerous.  To the extent a Class Member had a question about an aspect of the notice or settlement, they could obtain answers through a variety of means.  For example, the settlement-specific website included a FAQ section about the settlement and approval process.  Additionally, the Claims Administrator maintained an email address to respond to Class Member questions.  Keough Suppl. Decl. ¶ 5.

Lee also objects to the settlement because it does not include an opt-out provision. However, Rule 23(b)(2) does not require an opportunity for class members to opt out. Moreover, "courts routinely certify mandatory non-opt-out classes under Rule 23(b)(2) in cases involving hybrid claims for injunctive relief and damages" where, as here, the claims for injunctive relief predominate over the claims for damages.  White, 822 F. Supp. at 1411; see also Cobell v. Salazar, 679 F.3d 909, 917-18 (D.C. Cir. 2012) (holding that Rule 23(b)(2) class settlement with standardized monetary awards and no opt-out provision was appropriate).

Lee further argues that the settlement is the result of collusion, and that Class Counsel and HOME Line "manipulate[ed] the system and the case law and this court into getting what they want and not what's in the best interest of any class member or the class as a whole."  Obj. at 8.  This argument lacks merit.  As discussed above, the Settlement was the result of an arm's length negotiation following zealous litigation by all parties.  Further, the settlement serves the interests of the Settlement Class by providing substantial, certain, and immediate injunctive and monetary relief to the Settlement Class.

Lee also argues that the Class Representatives do not adequately represent the Application Class.  However, Lee does not identify a conflict or antagonistic interests between the Class Representatives and the Application Class.  For the reasons discussed above, the Court concludes the Class Representatives adequately represent the Application Class.

Lee further contends that the proposed Incentive Awards to current and former Class Representatives are unfair because she has devoted significant time to the case but is not receiving an Incentive Award.  Relevant factors in deciding whether an Incentive Award to a plaintiff is warranted include:  (1) actions the plaintiff took to protect the class' interest; (2) the degree to which the class benefitted from those actions; and (3) the amount of time and effort plaintiff expended in pursuing litigation.  In re U.S. Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir. 2002).  The Court does not believe that Lee's actions have protected the interests of or benefitted the Class.  Thus, Lee's challenges to Incentive Awards are not persuasive.

Lee also argues that the amount and apportionment of payments to Class Members is inadequate and unfair because some Class Members have been damaged more than others.  However, "[i]n assessing the fairness of a settlement, the Court's role is not to make a de novo

evaluation of whether the measures applied to all claimants provide each individual with a satisfactory recovery.  Rather, the criteria or methodology employed by the litigants is sufficient if its terms, when applied to the entire group of individuals represented, appear reasonable." E.E.O.C. v. McDonnell Douglas Corp., 894 F. Supp. 1329, 1335 (E.D. Mo. 1995).  Here, the method of apportioning damages under the settlement appears reasonable to the class as a whole, as evidenced in part by the overwhelming lack of opposition to the Settlement.

Lee similarly argues this lawsuit should not have been filed as a class action due to the different types and degree of harm experienced by Class Members.  As analyzed above, however, the action satisfies the requirements for class certification under Rule 23.

Lee further contends that the $200,000 to be paid to the Equitable Relief Fund under the settlement is unfair because that money should go to the victims in this case.  This argument fails because the Equitable Relief Fund will be used for increasing access to affordable housing within the community, which benefits Class Members.

Lee also objects to a provision in the Settlement Agreement stating that payments to Class Members who are also Medicare beneficiaries will not be released until after Medicare confirms that no "conditional Payments" have been made on that Class Member's behalf.  See Settlement Agreement § III(B).  This provision is commonly included in class action settlements and is reasonable.  See In re Nat'l Football League Players' Concussion Injury Litig., 307 F.R.D. 351, 421 (E.D. Pa. 2015) ("[Medicare] lien satisfaction as a precondition to disbursement of awards is reasonable.  Similar lien satisfaction provisions exist in virtually all mass tort and class action personal injury settlements.").

Because all of the concerns stated in Lee's Objections are unfounded, the Objections are

16

overruled.

**E.  Plan of Allocation, Claims Administrator Recommendations**

Where, as here, a settlement of class claims includes a lump sum payment, the Court must approve a plan for allocating the settlement proceeds to class members.  White, 822 F. Supp. at 1417.   In evaluating a plan of distribution, the Court need only find that the plan has a "reasonable, rational basis."  In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig., 4 F. Supp. 3d 94, 108 (D.D.C. 2013).

Here, the plan of distribution set forth in the Settlement Agreement is straightforward, rational, and reasonable.  Additionally, Class Members have received full and fair notice of the plan of distribution and, with the exception of one individual, do not oppose it.  Thus, the Court approves the plan of allocation set forth in the Settlement Agreement and in Plaintiffs' brief in support of final approval of the Settlement Agreement.  See Pls.' Mem. Supp. Mot. [Docket No. 195] at 29–32.

Additionally, the Court approves the Claims Administrators' recommendations concerning the acceptance or rejection of timely claims and authorizes payment of eligible claims.  See Keough Suppl. Decl. ¶¶ 13–22.  Any late-filed claims not received by the Claims Administrator as of January 16, 2018 are denied.

**F.     Attorneys' Fees, Incentive Awards, Notice and Administration Costs**

Class Counsel requests approval of $76,000 in attorneys' fees, $20,000 in expenses related to the notice program and claims administration, and $14,000 in Incentive Awards.

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).  In determining whether a requested fee is reasonable, courts consider the following factors:

> (1) the benefit conferred on the class, (2) the risk to which plaintiffs' counsel was exposed, (3) the difficulty and novelty of the legal and factual issues of the case, (4) the skill of the lawyers, both plaintiffs' and defendants', (5) the time and labor involved, (6) the reaction of the class, and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases.

Caligiuri v. Symantec Corp., 855 F.3d 860, 866 (8th Cir. 2017).

Class Counsel's requests $76,000 in attorneys' fees and expenses, which represents 11.7% of the lump sum in this case.  The requested fee is reasonable under the relevant factors because: (1) the injunctive relief and cash payment under the settlement provides a substantial and immediate benefit to the Class; (2) Class Counsel, in taking this case on a contingent fee basis, was exposed to significant risk; (3) class action and FHA litigation present complex and novel legal and factual issues; (4) the lawyers for both sides were skilled and experienced; (5) Class Counsel has expended nearly 2,135 hours of work in this case;[6] (6) out of a Class of hundreds of Class Members, only one objection was filed; and (7) the requested attorney fee percentage of 11.7% is well below the 25-36 percent "frequently awarded" by district courts in the Eighth Circuit.  Id.  The requested fee is also reasonable under the lodestar method because counsel is requesting a fee that is substantially below their lodestar.  Marttila Suppl. Decl. ¶¶ 22-23; Thompson Decl. [Docket No. 199] ¶¶ 6–7.

Regarding the request for payment of Incentive Awards, courts in the Eighth Circuit routinely approve service award payments to class representatives for their assistance to a

---

[6] See Marttila Suppl. Dec. ¶ 24.

18

plaintiff class.  See, e.g., In re Xcel Energy, Inc., Sec., Derivative, & "ERISA" Litig., 364 F.

Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 for eight lead plaintiffs in securities

class action); Austin v. Metro. Council, Civ. No. 11-3621 [Docket No. 27] ("Order Granting

Final Approval") ¶ 48 (D. Minn. Mar. 27, 2012) (awarding $20,000 for each named plaintiff in a

discrimination case class action).  In this case, the Class Representatives have spent considerable

effort in responding to multiple discovery requests, being deposed, and participating in numerous

conferences and meetings with their attorneys.  The actions taken by the Class Representatives

resulted in substantial benefits to the Class.  Therefore, the Court finds that the proposed

Incentive Awards are appropriate.

With respect to the request for payment of expenses related to the notice program and

claims administration, the Court finds the $20,000 requested, $5,000 of which will be allocated

to HOME Line as fair compensation for work related to the notice program and claims

administration, is fair and reasonable.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings in this case,

**IT IS HEREBY ORDERED** that Claire J. Lee's Objections [Docket Nos. 182, 186] are

**OVERRULED**, and Plaintiffs' Motion for Order and Judgment Granting Final Approval of

Class Action Settlement and Certifying Settlement Class [Docket No. 192] is **GRANTED** as

follows:

### I.      Final Approval of the Settlement Agreement

A.      Unless otherwise provided herein, the terms used in this Order and Judgment are

defined in accordance with the definitions of such terms set forth in the Settlement Agreement.

B.     The terms of the Settlement Agreement are approved.  As discussed above, the Settlement is in all respects fair, reasonable, adequate and proper, and in the best interest of the Settlement Class.  In reaching this conclusion, the Court considered factors that include:  (1) an assessment of the likelihood that Plaintiffs would prevail at trial; (2) the range of possible recovery available to Plaintiffs and the Settlement Class; (3) the consideration provided to Settlement Class members pursuant to the Settlement Agreement as compared to the range of possible recovery discounted for the inherent risks of litigation; (4) the complexity, expense and possible duration of the Action in the absence of a settlement; (5) the nature and extent of the objections to the Settlement; and (6) the stage of proceedings at which the Settlement was reached.

C.     For the reasons discussed above, the Court finds that the Settlement Agreement was entered into by experienced counsel after extensive, arm's length negotiations.  The Settlement is not the result of collusion.  The Settlement was entered into in good faith.  Class Counsel and Plaintiffs have fairly and adequately represented the Settlement Class for purposes of entering into and implementing the Settlement.

D.     The Court finds that there is no just reason for delay in entering the Final Order and Judgment Approving Settlement pursuant to Fed. R. Civ. P. 54(b), because:  (1) delay would not be in the best interests of the Settlement Class Members, who will be able to receive Awards shortly after entry of the Final Order and Judgment Approving Settlement; and (2) judicial economy and administration would be served by the efficient resolution of the claims of Settlement Class Members by means of the Settlement.

## II.     Certification of the Settlement Class

A.     The Court conditionally certified the following Settlement Class, made up of two classes (the "Displacement Class" and the "Application Class," or collectively, the "Classes") in the Preliminary Approval Order:

(a)     **The Displacement Class.**  All persons who were tenants at the Property as of September 30, 2015, but no longer reside there and whose household at the time of their occupancy of the property included at least one person qualifying as a member of a protected class under the Fair Housing Act, 42 U.S.C. § 3602 et seq., (the "Act") under one of the following categories:

1.     Non-white;

2.     Handicapped as defined by the Act;

3.     National origin; and

4.     Familial status.  In this case, that would be limited to tenants who had or desired to have more than two individuals reside in the unit due to at least one individual under the age of 18 residing in the unit.

(b)     **The Application Class.**  All persons who, from September 30, 2015, until the Execution Date of this Settlement Agreement, either applied for tenancy at the Property but were rejected, or completed a Guest Card expressing interest in tenancy at the Property but did not apply, as a result of the screening criteria imposed by Defendants and whose household included at least one person qualifying as a member of a protected class under the Act, under one of the following categories:

1.     Non-white;

2.      Handicapped as defined by the Act;

3.      National origin; and

4.      Familial status.  In this case, that would be limited to tenants who had or desired to have more than two individuals reside in the unit due to at least one individual under the age of 18 residing in the unit.

B.      As discussed above, the Court finds that, for purposes of settlement of the Action only, the Settlement Class satisfies the requirements of Fed. R. Civ. P. 23(a), as follows:

(1)      In accordance with Fed. R. Civ. P. 23(a)(1), the Settlement Class members are so numerous that joinder of all such persons is impracticable.

(2)      In accordance with Fed. R. Civ. P. 23(a)(2), there are questions of law and/or fact common to the Settlement Class Members.

(3)      In accordance with Fed. R. Civ. P. 23(a)(3), the claims of the Class Representatives are typical of the claims of the Settlement Class.

(4)      In accordance with Fed. R. Civ. P. 23(a)(4), the Class Representatives will fairly and adequately represent the interests of the Settlement Class, and do not have interests that are antagonistic to the Settlement Class.

C.      The Court finds that, for purposes of settlement of the Action only, the Settlement Class satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

D.      The Court therefore certifies, for settlement purposes only, the Settlement Class as defined in Section II(A) of this Order.

### III.   Notice to Settlement Class

A.      The Court finds that the Notice Program (1) met the requirements of Fed. R. Civ.

P. 23(c)(2)(a) and due process; (2) directed notice in a reasonable matter to all class members

who would be bound by the proposal; (3) was the best practicable notice under the

circumstances; (4) reasonably apprised members of the Settlement Class of the pendency of the

Action and their right to object to the Settlement; and (5) was reasonable and constitutes due,

adequate and sufficient notice to all those entitled to receive notice of the Settlement.

B.      The Court further finds, pursuant to Fed. R. Civ. P. 23(e) that the Class Notice

adequately informed Settlement Class members of their rights with respect to the Action.

### IV.   Dismissal With Prejudice

The Court hereby enters a judgment of dismissal of the Complaint in the Action with

prejudice and without costs (except as specified herein), pursuant to Fed. R. Civ. P. 54 and

Fed. R. Civ. P. 58.

### V.   Allocation of Settlement Proceeds, Including Attorney's Fees and Expenses and Incentive Awards

A.      The Court hereby approves the settlement terms and plan of distribution set forth

in the Settlement Agreement as fair, reasonable, and adequate.

B.      The equitable relief set forth in the Parties' Settlement Agreement is fair,

reasonable, and adequate and addresses the claims for injunctive relief of the Class as a whole.

C.      The Parties are ordered to follow the settlement allocation process and timeline

specified in their Settlement Agreement.  Consistent with that timeline, within 10 days of the

Effective Date of the Settlement Agreement, Defendants shall pay a total of $650,000 (the

"Settlement Proceeds") to Class Counsel's designee, pursuant to instructions to be provided by

Class Counsel.  However, if any Participating Class Member is determined to be a Medicare beneficiary, payment to that class member shall be held in the client trust account of Defendants' attorneys until such time as any potential lien claimed by Medicare is resolved.  If the lien may not be resolved, any amounts that are held in trust pending resolution of potential liens from Medicare may be excepted from this payment until the potential lien claim is resolved.

D.     From the Settlement Proceeds referenced in Section V(C) above, a minimum of $200,000, plus any funds remaining unspent after the notice and claims administration costs have been fully paid, and any funds deemed waived following expiration of a check, shall be allocated to the NOAH Impact Fund, which is a subsidiary non-profit entity of the Greater Minnesota Housing Fund, for the purpose of assisting in the acquisition and preservation of naturally affordable rental properties in the Twin Cities Metro Area at risk of conversion to higher rents and the threat of displacement of low and moderate income residents.

E.     From the Settlement Proceeds referenced in Section V(C) above, a total of $300,000 will be allocated to Participating Class Members as follows:

a.     A total of $290,000 will be allocated to Participating Class Members with respect to the Displacement Class to Participating Class Members who timely submit an executed Claim Form and Release.  Individual payments from this amount will be made consistent with the pro rata allocations agreed upon by the parties as set forth in the Settlement Agreement.

b.     A total of $10,000 will be allocated with respect to the Application Class to Participating Class Members who timely submit an executed Claim Form and Release.  Individual payments from this amount will not exceed

$25 per Participating Class Member, and any funds allocated but not distributed will revert to the Equitable Relief Fund.

F.    From the Settlement Proceeds referenced in Section V(C) above, the following additional amounts shall be paid to certain current or former Class Representatives or Plaintiffs for their participation in the litigation:

a.    *Tier 1.*  Certain current or former Class Representatives who testified at a deposition in the Action and who attended one or more settlement conferences in their capacity as class representatives—Jurline Bryant and Maria Johnson—shall each be paid $2,500 as an Incentive Award.

b.    *Tier 2.*  Certain current or former Class Representatives who either testified at a deposition in the Action or who attended one or more settlement conferences in their capacity as class representatives—Linda Soderstrom, Julio Stalin de Tourniel, and Viky Martinez-Melgar—shall each be paid $2,000 as an Incentive Award.

c.    *Tier 3.*  Certain current or former Class Representatives or Plaintiffs who produced documents to Defendants in the Action—Craig Goodwin, Norma Ziegler, and Kerly Rios—shall each be paid $1,000 as an Incentive Award.

G.    From the Settlement Proceeds referenced in Section V(C) above, Plaintiff HOME Line shall be allocated $40,000 to resolve all claims brought on its own behalf in the Action.

H.    From the Settlement Proceeds referenced in Section V(C) above, Class Counsel shall be allocated a total of $76,000 as reimbursement of reasonable litigation expenses and

attorney's fees, as follows:

    a.    Housing Justice Center shall be allocated $46,000 as reimbursement of its reasonable litigation expenses and attorney's fees; and

    b.    Lockridge Grindal Nauen P.L.L.P. will be allocated $30,000 as reimbursement of its reasonable litigation expenses and attorney's fees.

I.    From the Settlement Proceeds referenced in Section V(C) above, $15,000 shall be allocated to the Claims Administrator, and $5,000 shall be allocated to Plaintiff HOME Line, for expenses incurred and fair compensation for work related to the Notice Program and Claims Administration.

J.    Any settlement funds relating to un-cashed checks issued as Settlement Proceeds, allocated but un-used Notice Costs, allocated but un-distributed Application Class Funds, or other residual settlement funds shall revert to the Equitable Relief Fund.

## VI.    Releases

A.    The Court finds that, pursuant to the terms of the Settlement Agreement, each Releasing Party shall be deemed to have released and forever discharged each Released Party of and from liability for any and all Released Claims as defined in the Settlement Agreement.

B.    The Court further finds that, pursuant to the terms of the Settlement Agreement, each Released Party shall be deemed to have fully, finally and forever released, relinquished and discharged each and all of the Plaintiffs and members of the Settlement Class, and their attorneys, accountants, experts, consultants, insurers and agents, from all claims of every nature and description, known or unknown, relating to the initiation, assertion or prosecution of the Action and/or the Released Claims.

**VII.    Objections**

The Court hereby overrules Lee's objections to the Settlement and finds that the Settlement Agreement is in all respects fair, reasonable, adequate and proper.

**VIII.   Continuing Jurisdiction**

Without in any way affecting the finality of this Order and Judgment, the Court hereby retains jurisdiction over the Parties to the Settlement, including all Settlement Class members, to construe and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the Parties.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 2, 2018.